(April 24, 1986)*

■ In the Matter of MIGUEL PUIG, Petitioner, v ROBERT J. McGUIRE, as Police Commissioner of the City of New York, et al., Respondents.—In this CPLR article 78 proceeding transferred to this court by order of the Supreme Court, New York County (Herman Cahn, J.), entered March 27, 1984, the deter-

* Not published with other decisions of April 1986, 119 AD2d 425 [Rep.

mination of the Police Commissioner of the City of New York, dated July 18, 1983, which found petitioner guilty of failing to comply with an order to submit to a drug test, and not guilty of a charge of ingesting narcotic drugs, and which dismissed him from the New York City police service, is unanimously annulled, on the law and the facts, to the extent of vacating the penalty of dismissal and remanding to the Police Commissioner for the imposition of an appropriate penalty not inconsistent herewith, without costs.

Petitioner Miguel Puig is a New York City police officer who was charged with two violations of Department regulations—refusal to comply with an order to submit to a urine test and "wrongful ingestion of a mood altering substance"—as a result of an incident which took place on February 21, 1983. After a full hearing, petitioner was found guilty of failing to comply with the order to submit to the test and not guilty of the charge of actually using narcotic drugs.

The testimony adduced at the hearing revealed the following. Petitioner has been a member of the New York City Police Department since his appointment on May 16, 1969. For more than six years of his service as a police officer, petitioner worked undercover, infiltrating radical political and terrorist organizations.

Eventually, Puig developed a nervous condition and on May 12, 1982, he was placed on restricted duty and relieved of his firearms. Furthermore, during the period shortly before the incident here at issue, Puig had undergone treatment for alcohol abuse, had been separated from his wife and children, and had been receiving psychiatric care.

Petitioner voluntarily reported to the Health Services Division of the Police Academy on Monday, February 21, 1983, complaining that he was extremely nervous, could not sleep, and could not work at his assigned duties. The previous Friday, February 18, he had reported out sick with the flu. On February 21, Puig was examined by District Surgeon Dr. Albert Cohen, who conducted a physical examination and observed that petitioner was gaunt and unshaven and in an extreme nervous state. Dr. Cohen concluded that Puig was suffering from an acute mental problem.

Since Dr. Cohen believed that it was possible that drug abuse could be the cause of Puig's condition, he decided that petitioner should submit to a urine examination, known as a "Dole" test.

Dr. Cohen placed petitioner in the care of a Sergeant Cruse

to administer the test. Sergeant Cruse offered petitioner an opportunity to telephone a union representative, but, the day being Washington's Birthday, a national holiday, no one was in the union office to answer the phone when petitioner called. After this unsuccessful call, the Sergeant directed Puig to provide a urine sample but Puig refused.

At the hearing, Puig offered the following reasons for his refusal to submit to the test: "First of all, I had no idea what was the purpose of the examination. And second, I didn't have a chance to confer with a delegate. And third, I was under stress and I couldn't really think straight that day. I just couldn't perform the way I would do under normal circumstances."

After refusing the test, Puig asked the sergeant "Am I under arrest" to which Sergeant Cruse replied "No". Thereupon Puig walked out of the office.

At the conclusion of the hearing, at which Dr. Cohen, Sergeant Cruse, and Puig testified, Puig was found guilty of charge No. 1, failing to comply with the order to submit to the Dole test, and not guilty of charge No. 2, "the wrongful ingestion of a mood altering substance", for lack of any convincing proof that he had used drugs. The Hearing Officer recommended a penalty of dismissal, which recommendation was adopted by the Police Commissioner.

Under the circumstances of this case, we feel that the severe penalty of dismissal was disproportionate to the offense and shocking to our sense of fairness. (See, Matter of Pell v Board of Educ., 34 NY2d 222, 233.) Puig had served for over six years as an undercover police officer. In order to socialize with members of the groups he had infiltrated and gain their confidence, he admittedly used marihuana and cocaine. It was the dangerous and schizophrenic experience of working undercover for so long that caused him to lose his perspective and left him in a disoriented state.

Prior to his appointment with Dr. Cohen, Puig had undergone treatment for alcoholism, had sought psychiatric help, and had recently and abruptly been separated from his wife and children. Based on these factors and his extreme nervous condition, it would appear that he was in no position to make a rational decision regarding submitting to the Dole test.

The harsh penalty of outright dismissal is so disproportionate to the offense of petitioner's failure to submit to the Dole test under circumstances such as these, especially when viewed in conjunction with his acquittal of the more serious

charge, that it is shocking to our sense of fairness. Before the onset of his nervous condition, he had an unblemished record. Consideration must be accorded to his many years on the force spent in undercover work and the fact that performance of such undercover work often requires the police officer to surrender his personality and temporarily acquire the traits of the group he infiltrates, an experience that can result in a severe sense of disorientation, especially when an officer serves undercover for a long period of time, as Puig did. Unfortunately, in the course of this assignment, it is sometimes incumbent on an undercover officer to participate in illicit activities in order to ingratiate himself to the targeted group. Petitioner's only admitted encounter with narcotics was for purposes of advancing his standing within the underground groups he had infiltrated, in the diligent performance of his duties as an undercover officer. The root cause of petitioner's problems, culminating in the incident of February 21, 1983, can directly be traced to the pressures arising out of his undercover experience.

Accordingly, we believe that a penalty of temporary suspension would be more appropriate than the final termination imposed here. It would also further serve a rehabilitative purpose, since during the term of suspension petitioner can receive proper medical and psychiatric care, with a view towards his reinstatement. We therefore remand the matter to the Police Department for further consideration and the imposition of a temporary suspension of an appropriately remedial duration. Concur—Murphy, P. J., Sandler, Fein, Milonas and Ellerin, JJ.